FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 29, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TELEFARO H.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>Defendant. | NO. 4:26-CV-5041-TOR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S RESPONSE MOTION |

BEFORE THE COURT are Plaintiff's Motion for Summary Judgment (ECF No. 5) and Defendant's Response Motion (ECF No. 7). These matters were submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Plaintiff's motion (ECF No. 5) is **GRANTED** and Defendant's motion (ECF No. 7) is **DENIED**.

//

//

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158–59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

**FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that [he or she] is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)–(v). At step one, the Commissioner considers the claimant's

work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

On January 18, 2022, Plaintiff protectively filed an application for Title XVI supplemental security income benefits, alleging a disability onset date of September 1, 2017. Tr. 18, 249–258. The application was denied initially, and again on reconsideration. Tr. 18. Plaintiff appeared at a telephonic hearing before an administrative law judge ("ALJ") on May 15, 2025. Tr. 18, 52–102. During the hearing, Plaintiff amended his alleged onset date to the protective filing date of January 18, 2022. Tr. 18, 54, 101, 298.

At step one of the sequential evaluation analysis, the ALJ found Plaintiff had not engaged in substantial gainful since January 18, 2022, the application date. Tr. 21. At step two, the ALJ found Plaintiff had the following severe impairments: status post multiple gunshot wounds to the lower extremities in May 2014; asthma; depression, anxiety, post-traumatic stress disorder ("PTSD"); and obesity. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. *Id.*

The ALJ then found Plaintiff had a residual functional capacity to perform light work with the following limitations:

> [C]laimant is able to lift, carry, push, pull up to 20 pounds occasionally and 10 pounds frequently, sit for a total of 6 hours a day, stand and or walk for a total of 6 hours a day. He can never climb ladders ropes or scaffolds. He can occasionally climb ramps and stairs. He can occasionally stoop, crouch, kneel, or crawl. He is able to understand, remember and carry out simple instructions. He requires an occupation with occasional interaction with co-workers and supervisors. He requires an occupation with set routine, procedures and instructions, and occasional changes in a routine work setting. He requires an occupation with occasional interaction with the public. He can perform tasks that do not involve a specific production rate pace such as assembly line work or an hourly production quota. He can maintain regular attendance and be punctual within customary tolerances. He can perform activities within a schedule. He can have occasional exposure to concentrated fumes, odors, dusts, gases, and pulmonary irritants. He can have occasional exposure to hazards such as working in high exposed places and being in proximity to moving mechanical parts, and he can do no driving of vehicular equipment.

Tr. 25.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 37. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, and testimony from a vocation expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as marker, routing clerk, and cleaner housekeeping. Tr. 38. The ALJ concluded Plaintiff was not under a

disability, as defined in the Social Security Act, since January 18, 2022, the date the application was filed. Tr. 40.

On June 20, 2025, the ALJ denied Plaintiff's claim. Tr. 15–46. The Appeals Council denied review on January 23, 2026, making the ALJ's decision the final decision subject to judicial review. Tr. 1–6; 20 C.F.R. § 416.1481.

## ISSUES

Plaintiff seeks judicial review of the ALJ's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues:

1. Whether the ALJ properly weighed the medical opinion evidence;
2. Whether the ALJ properly considered Plaintiff's subjective symptom testimony;
3. Whether the ALJ conducted an adequate step three analysis;
4. Whether the ALJ properly weighed the lay witness testimony; and
5. Whether the ALJ properly met her burden at step five.

ECF No. 5 at 3, 6, 8.

//

//

//

//

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff argues the ALJ erred by failing to properly evaluate the medical opinion evidence of Dr. David T. Morgan, examining psychologist, and Dr. Janis Lewis, reviewing psychologist. ECF No. 5 at 6, 8–15.

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. 20 C.F.R. § 416.920c; *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844–01 (Jan. 18, 2017).

Under the new regulations, the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s)." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844–01, 5867–68. Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a)–(b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including but not limited to "evidence showing a medical source has familiarity with the other evidence in the

claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c)(1)–(5).

The ALJ is required to explain how the most important factors, supportability and consistency, were considered. 20 C.F.R. § 416.920c(b)(2). These factors are defined as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)–(2).

The ALJ may, but is not required to, explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 416.920c(b)(2). However, where two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the most persuasive factors" were considered. 20 C.F.R. § 416.920c(b)(2).

*1. David T. Morgan, PhD, Examining Psychologist*

On February 3, 2022, Dr. Morgan conducted a psychological evaluation of Plaintiff. Tr. 1314-1318. Under his clinical findings, Dr. Morgan reported that Plaintiff had anxiety and psychosis. Tr. 1315. He noted that Plaintiff experienced recurrent panic attacks which included sweating, trembling, increased heart rate, shortness of breath, chest pain, feeling dizzy, fear of dying, and fear of losing control. *Id.* He indicated that Plaintiff's anxiety was "moderate to marked severity; daily frequency." *Id.* As to Plaintiff's psychosis, Dr. Morgan reported "major relational impairment, delusions, hallucinations" and he noted this to be "moderate to marked severity; daily frequency." *Id.*

In rating Plaintiff's basic work activity, Dr. Morgan found that he had marked limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, learn new tasks, perform routine tasks without special supervision, adapt to changes in a routine work setting, be aware of normal hazards and take appropriate precautions, ask simple questions or request assistance, communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, complete a normal work day and work week without interruptions from psychologically based symptoms, and set realistic goals and plan independently. Tr. 1316. Dr. Morgan found that Plaintiff had moderate limitations in the ability to

understand, remember, and persist in tasks by following detailed instructions and to make simple work-related decisions. *Id.* He determined that Plaintiff had a mild limitation in the ability to understand, remember and persist in tasks by following very short and simple instructions. *Id.*

The ALJ found Dr. Morgan's opinion to be unpersuasive. Tr. 36. He reasoned that Dr. Morgan's opinion was not persuasive because he generally did not provide a rationale or basis for his conclusory findings. *Id.* Further, the ALJ determined that Dr. Morgan's findings of moderate to marked and marked limitations were not consistent with and/or supported by the objective evidence during the period under review, or with the evidence of record. *Id.*

Plaintiff argues the ALJ legally erred in addressing the supportability and consistency factors and simply offered his own conclusions. ECF No. 5 at 9–10. He contends that Dr. Morgan's examination findings support the opined limitations. *Id.* at 10. The Court agrees.

Dr. Morgan's clinical findings indicated that Plaintiff experienced daily moderate to marked symptoms of anxiety, with "recurrent panic attacks including sweating, trembling, increased heart rate, shortness of breath, chest pain, feeling dizzy, fear of dying, [and] fear of losing control[,]" as well as daily moderate to marked symptoms of psychosis, including "major relational impairment, delusions, [and] hallucinations[.]" Tr. 1315. He conducted a mental status examination,

finding that Plaintiff's memory, fund of knowledge, concentration, abstract thought, and insight and judgment were not within normal limits. Tr. 1318. Dr. Morgan's mental status examination also revealed that Plaintiff presented with normal speech, cooperative attitude, and normal affect, but with anxious mood, delusional thought patterns, and a distorted sense of perception. Tr. 1317-18. Further, Dr. Morgan's clinical interview findings showed that Plaintiff reported "he has a voice inside his head that bullies him" and he "has panic attacks on a regular basis." Tr. 1314. His clinical interview findings also noted that Plaintiff "states that he tries to go to his appointments but will often have a panic attack and leave before he gets to see the provider." Tr. 1315.

Dr. Morgan's clinical findings, mental status examination, and clinical interview support his opinion that Plaintiff had moderate to marked limitations in the ability to perform many of the basic work activities. Tr. 1314–18. Therefore, the Court finds the ALJ's conclusion that Dr. Morgan "generally did not provide a rationale or basis for his conclusory findings[,]" without further explanation, is not supported by substantial evidence. Tr. 36.

The ALJ also reasoned that Dr. Morgan's findings of moderate to marked and marked limitations were not consistent with and/or supported by the objective evidence during the period under review. Tr. 36. However, the ALJ did not cite to or reference objective evidence that he found to be inconsistent with Dr. Morgan's

opinion. *Id*. Plaintiff asserts that when the record is properly considered, it is consistent with and supportive of Dr. Morgan's disabling assessment. ECF No. 5 at 11. The Court agrees. *See* Tr. 1108–1113 (May 19, 2022: Plaintiff presented for medical clearance for psychiatric admission and was transported to Waypoint for stabilization due to anxiety and schizophrenia); Tr. 1207–1208 (June 28, 2022: mental status exam showed restlessness, anxious mood and affect, paranoid thought content, concrete thinking, circumstantial associations, and auditory hallucinations); Tr. 1240 (September 7, 2022: mental status exam showed anxious mood and affect, thought content characterized by guilt, concrete thinking, circumstantial associations, and auditory hallucinations); Tr. 1280–1281 (July 26, 2023: mental status exam showed poor eye contact, soft speech with decreased rate, anxious mood and affect, concrete thinking, and thought content characterized by worthlessness, loneliness, guilt, hopelessness, and helplessness); Tr. 1500–1502 (October 6, 2023: mental status exam showed Plaintiff was evasive/distant, with poor eye contact, soft speech at a decreased rate, anxious mood and affect, concrete thinking, circumstantial associations, restlessness, and thought content characterized by worthlessness, guilt, and hopelessness); Tr. 1521–1523 (November 14, 2023: mental status exam showed soft speech with paucity and decreased rate, anxious mood and affect, thoughts of loneliness, concrete thinking, circumstantial associations, and restlessness); Tr. 1562–1564 (February 7, 2024:

mental status exam showed soft speech with paucity and poor articulation, difficulty naming objects, anxious mood and affect, thought content characterized by paranoia and loneliness, concrete thinking, circumstantial associations, and restlessness); Tr. 1576–1577 (February 28, 2024: mental status exam showed soft speech with paucity and poor articulation, difficulty naming objects, anxious mood and affect, thought content characterized by paranoia and loneliness, concrete thinking, circumstantial associations, and auditory hallucinations); Tr. 1635–1636 (May 2, 2024: mental status exam showed soft speech with paucity, difficulty naming objects, anxious mood and affect, thought content characterized by paranoia and loneliness, concrete thinking, and auditory hallucinations); Tr. 1664–1665 (October 22, 2024: mental status exam showed soft speech with paucity, difficulty naming objects, sad and anxious mood with anxious affect, thought content characterized by paranoia and loneliness, concrete thinking, and auditory hallucinations); Tr. 1742–1743 (February 20, 2025: mental status exam showed soft speech with paucity, difficulty naming objects, sad and anxious mood with anxious affect, thought content characterized by paranoia and loneliness, concrete thinking, and auditory hallucinations). Therefore, the ALJ's finding that Dr. Morgan's opinion is not consistent with and/or supported by the objective evidence is not supported by substantial evidence.

The ALJ also found Dr. Morgan's opinion to be unpersuasive, and not consistent with and/or supported by the evidence of record. Tr. 36. Specifically, the ALJ found that Plaintiff's "ability to perform the array of activities" did not support the severity of Dr. Morgan's assessment. *Id.*; citing Tr. 1206 (June 2022: Plaintiff reported he had a supportive girlfriend, he enjoyed spending time with his two young children at home, playing video games, and watching television); Tr. 361–69 (September 2022: Plaintiff stated in his Function Report that he had no difficulty caring for his personal care, he had the ability to clean and do laundry, he had the ability to walk, use public transportation, and shop in stores, and for hobbies he watched television and video games); Tr. 1624 (July 2023: Plaintiff reported that he obtained custody of his 15-year-old son); Tr. 1358 (October 2023: Plaintiff indicated that his hobbies were motorcycles); Tr. 1645 (July 2024: Plaintiff reported he was participating in drug court, doing well, "I work with drug court and with the star project. They help me out and I volunteer my time. It is a great project and very helpful."); Tr. 1645 (July 2024: Plaintiff asked for monthly appointments with his treating provider due to weekly appointments with his drug treatment program and working with drug court and attending meetings); Tr. 1648 (August 2024: Plaintiff reported he was riding his bike everywhere, and he was excited for Denny's coming into town because he could work there 20 hours a

week, washing dishes); Tr. 77 (Plaintiff testified that he plays video games with his children and has been doing Legos with his son).

The Court finds that the ALJ failed to explain how Plaintiff's activities are inconsistent with Dr. Morgan's disabling opinion. The Ninth Circuit has warned courts to exercise caution in making an adverse finding on the basis of a claimant's activities of daily living. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Although the ALJ cited Plaintiff's Function Report from September 2022, to show that he had no difficulty tending to his personal care, and he had the ability to clean, do laundry, walk, use public transportation, shop in stores, watch television, and play video games, Plaintiff also indicated in the same Function Report that he was homeless, he had problems with socializing and paranoia, and when he had a place to live he cleaned and did laundry, but it took him "all day[.]" Tr. 361–69. Further, the ALJ cited a progress note from July 2023, where Plaintiff reported that he got custody of his 15-year-old son, but the same note referenced Plaintiff's "[d]ifficulty with attendance has been a barrier for progress." Tr. 1624. Moreover, Plaintiff testified that he "seem[s] to do okay" at the monthly drug court because there are usually only about six people there. Tr. 77, 1645. The Court finds that the ALJ did not identify activities of daily living that are inconsistent with Dr. Morgan's assessed limitations.

The ALJ's error in failing to adequately address the supportability and consistency factors in discounting Dr. Morgan's opinion was not harmless as the RFC presented to the vocational expert does not take into account the level of mental health impairments assessed by Dr Morgan. Tr. 93–96, 1314–1318.

*2. Janis Lewis, PhD, Reviewing Psychologist*

In February 2022, Dr. Lewis completed a "Review of Medical Evidence[.]" Tr. 1320–1322. Dr. Lewis indicated that she reviewed Dr. Morgan's report from February 3, 2022, and she mirrored Dr. Morgan's assessed limitations. Tr. 1320. Dr. Lewis listed Plaintiff's functional symptoms as anxiety, fear, delusions, and hallucinations, and indicated a severity rating of "4" for each symptom. Tr. 1322. The ALJ did not mention Dr. Lewis's review in his decision.

Plaintiff contends that the ALJ's failure to even mention Dr. Lewis's disabling assessment resulted in harmful legal error. ECF No. 5 at 3, 8, 14–15. Defendant counters that Dr. Lewis was essentially performing a quality assurance review of Dr. Morgan's report, and the ALJ was not required to evaluate or even consider Dr. Lewis's form report. ECF No. 7 at 13.

It appears that Dr. Lewis's limitation findings were based solely on Dr. Morgan's report. As the Court has determined that the ALJ failed to adequately address the supportability and consistency factors in discounting Dr. Morgan's

opinion, on remand the ALJ shall properly evaluate both Dr. Morgan's and Dr. Lewis's medical opinions.

**B. Plaintiff's Symptom Testimony**

Plaintiff contends the ALJ erred in rejecting his subjective symptom testimony. ECF No. 5 at 6, 8, 18–20. An ALJ engages in a two-step analysis to determine whether a claimant's subjective symptom testimony can be reasonably accepted as consistent with the objective medical and other evidence in the claimant's record. Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "The claimant is not required to show that her impairment 'could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2. When evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, the following factors should be considered: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an

individual's functional limitations and restrictions due to pain or other symptoms. *Id*. at *7–8; 20 C.F.R. § 416.929(c)(3).

Here, the ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 28.

Plaintiff contends that the ALJ improperly rejected his symptom testimony. ECF No. 5 at 6, 8, 18–20. The Court agrees as to Plaintiff's mental health impairments.

**a. Physical Impairments**

**i. Objective Medical Evidence**

The ALJ concluded that the medical evidence did not support Plaintiff's allegations of symptom severity and resulting functional limitations to the degree that he alleged. Tr. 29. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346–47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the objective medical evidence is a relevant factor, along with the medical source's information about the

claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

The ALJ noted that when asked where he felt pain, Plaintiff testified he felt a lot of pain in his right leg, right hip, and left calf, he had a lot of nerve damage, and his pain was constant. Tr. 26, 70. The ALJ indicated the evidence supported that Plaintiff had a significant past history of gunshot wounds primarily to his lower extremities, mostly his right leg, which occurred in the remote past in May 2014. Tr. 29; citing Tr. 481–1060, 1343–1493. However, the ALJ found that the medical evidence and Plaintiff's treatment history during the period under review did not support the degree of symptoms and functional limitations alleged. Tr. 32.

Specifically, the ALJ found that the evidence did not support Plaintiff's testimony that he needed to elevate his right leg higher than his waist four or five times a day for 20 to 35 minutes. Tr. 30–31. In support of this determination, the ALJ indicated, "albeit there may be some exceptions the claimant's musculoskeletal exams were largely within normal limits." Tr. 31; citing Tr. 492 (April 2022: an examination of his extremities indicated nontender, palpable pulses, no joint deformity or effusion, no significant edema, and normal range of motion); Tr. 1107 (July 2022: musculoskeletal exam indicated normal range of motion, no edema, no cyanosis); Tr. 1371 (September 2023: musculoskeletal exam

indicated intact distal pulses, no edema, no tenderness, no cyanosis, and no clubbing, with good range of motion in all major joints and no tenderness to palpation or major deformities noted); Tr. 1353 (November 2023: musculoskeletal exam revealed intact distal pulses, no edema, no tenderness, and no cyanosis, with good range of motion in all major joints and no tenderness to palpation or major deformities were noted with no back tenderness); Tr. 1711 (April 2024: musculoskeletal exam indicated no deformities, good passive range of motion without obvious deformity of the shoulder); Tr. 1693 (July 2024: examination of his extremities indicated good range of motion); Tr. 1697 (July 2024: musculoskeletal exam indicated intact distal pulses, no edema, no tenderness, no cyanosis, and no clubbing, with good range of motion in all major joints and no tenderness to palpation or major deformities); Tr. 1689–1693 (July 2024: treatment notes indicated that when seen at the emergency department, his gait was normal); Tr. 1686 (August 2024: treating provider indicated Plaintiff was in no acute distress,[1] lower extremity with "bowing" on lower leg, R>L; although he had a weak pelvis with one-legged stand, his range of motion in his hip and back were normal); Tr. 1778, 1787 (January 2025, February 2025: extremities exams indicated nontender).

---

[1] The ALJ referenced the treatment note as stating, "no acute distress" but the exact wording was "no apparent distress." Tr. 30, 1686.

The Court finds that the ALJ did not err in his determination that the objective medical evidence does not support Plaintiff's testimony that he needed to elevate his right leg higher than his waist four or five times a day for 20 to 35 minutes. Tr. 30–31.

As to Plaintiff's asthma, the ALJ found that during the period under review the majority of the evidence showed his respiratory exams to be within normal limits, and the objective tests were generally, if not consistently, within normal limits. Tr. 30–31; citing Tr. 1099[2] (May 2022: respiratory exam indicated he had good air movement bilaterally, no wheezes, and no rales. His cardiovascular exam indicated he had normal S1, S2, no rubs or murmurs); Tr. 1672 (June 2023: respiratory exam indicated his lungs were clear to auscultation bilaterally without crackles or wheezes, and his cardiovascular exam revealed a regular rate and rhythm without murmur, rub or gallop); Tr. 1372, 1443–1444 (September 2023: x-rays of his chest were negative); Tr. 1365–66 (October 2023: respiratory exam indicated he had good air movement bilaterally and his cardiovascular exam

---

[2] The ALJ's record cite is to a note on January 29, 2023, which showed that Plaintiff presented to the emergency department with back pain after falling in the bathtub a week earlier. Tr. 1099. The treatment notes indicate that Plaintiff had good air movement bilaterally. Tr. 1100.

indicated he had normal S1 S2; CT of his chest was unremarkable); Tr. 1714 (April 23, 2024: CT of his chest was unremarkable); Tr. 1775, 1782–1783 (February 2025: chest x-ray was negative when Plaintiff sought treatment at the emergency department because he felt sick for the past week and had worsening shortness of breath). However, the ALJ does not point to any testimony about Plaintiff's asthma other than to note that Plaintiff "stated he has asthma" and he has an inhaler. Tr. 26. It is unclear how his testimony that he has asthma was unsupported by the objective medical evidence.

**ii. Daily Activities**

The ALJ determined that Plaintiff's activities suggested a greater work capacity than alleged. Tr. 31. Specifically, the ALJ found the evidence did not support Plaintiff's testimony that he needed to elevate his right leg higher than his waist 4 or 5 times a day for 20 to 35 minutes. *Id.*; citing Tr. 1206 (June 2022: Plaintiff reported he enjoyed fishing and being outside in the mountains); Tr. 1097–1098 (August 2023: Plaintiff had the ability to ride a bike); Tr. 1358 (October 2023: Plaintiff reported he walked three miles to get to a physical therapy appointment); Tr. 1648 (August 2024: Plaintiff stated he was "riding my bicycle everywhere"); and was "excited for Denny's coming into town. I could work there, 20 hours a week, washing dishes"); Tr. 1732 (November 2024: Plaintiff stated he rode his bike to the clinic to pick up his medications).

The ALJ relies heavily on Plaintiff's reports that he rode his bicycle. Tr. 31. However, the ALJ acknowledged in his decision that Plaintiff "has never had a driver's license and he does not drive." Tr. 27, 76. The ALJ also recognized, "[a]s to the bike, he said using his bike is easier for him than walking as he can stand up and then sit back down on it when he feels uncomfortable." Tr. 28. While the ALJ cites to an October 2023 treatment note reporting that Plaintiff walked three miles to get to his physical therapy appointment, the treatment note does not indicate how long it took him to walk "about three miles[.]" Tr. 1358. Further, the ALJ acknowledged the treatment note indicated that Plaintiff was sore and wanted to skip the exercises that day. Tr. 29–30; 1358. The ALJ does not explain how riding his bike or one note indicating that he walked about three miles to get to an appointment translate to the ability to perform full-time work. *See Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that an ALJ may give less weight to allegations of disabling pain based on a claimant's ability to spend a substantial part of their day in activities that would translate to a workplace setting).

Finally, Plaintiff's statement in August 2024 that he was "excited for Denny's coming into town" and he "could work there, 20 hours a week, washing dishes" is not substantial evidence. Tr. 1648. Plaintiff said this in therapy as part

of his "response to the intervention progress made toward goals and strengths[.]" *Id*. This statement is irrelevant to his symptom reports.

The ALJ's conclusion that Plaintiff's activities of daily living were inconsistent with his alleged physical symptoms was not substantially supported by evidence from the record.

**iii. Conservative Treatment**

The ALJ noted that Plaintiff testified at the hearing that his right leg was shorter than his left leg due to the past gunshot wounds. Tr. 29. However, the ALJ found that during the period under review, Plaintiff's treatment had been conservative. Tr. 29–31; citing Tr. 1459 (November 2023: Plaintiff reported to a treating provider he had been in a motor vehicle accident as a passenger five months earlier, and he reported chronic pain in the right lower extremity; he reported going to physical therapy for this, and requested another physical therapy referral as he had missed some appointments and he was told he needed a new referral); Tr. 1473, 1673–1675 (June 2023: Plaintiff reported to a treating provider he had bilateral leg pain, he was taking gabapentin as instructed, he reported the pain had worsened, and he was wondering about physical therapy; he also indicated he had received an insert for his leg discrepancy and he was amenable to physical therapy); Tr. 1473–1474, 1676–1677 (September 2023: a provider stated Plaintiff's right leg was about 1-2 centimeters shorter than the left leg, and he had

normal range of motion at the knee and ankle; part of the assessment/plan indicated Plaintiff had leg length discrepancy and he had seen physiatry, physical therapy and orthotics for shoe insert); Tr. 1358–1359 (October 2023: a treating physical therapist stated Plaintiff's leg length discrepancy appeared to be significant enough to warrant orthotic intervention to aid in return to a functional gait; the therapist stated Plaintiff had to walk on tip toes on his right leg to get close enough to match the contralateral side and this was not functionally proper when more appropriate options exist; the physical therapist indicated Plaintiff's gait was antalgic with a lot of pelvis/hip/low back compensation and stated his leg length discrepancy appeared to be significant enough to warrant orthotic intervention to aid in return to a functional gait).

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). Here, the ALJ does not explain how Plaintiff's treatment for his leg length discrepancy undermined his symptom testimony. Tr. 29. The ALJ did not discuss what more aggressive treatment options were available that Plaintiff failed to pursue. Rather, the record reflects Plaintiff pursued the treatment options available to him: "has seen PT, physiatry, and orthotics[.]" *See* Tr. 1473–1474, 1676–1677. Further, in an October 2023 treatment note cited by the ALJ, a treating physical

therapist indicated that Plaintiff's prior treatment for his leg length discrepancy was physical therapy, surgery, and medications. Tr. 1358–1359. Thus, the ALJ discounting Plaintiff's subjective symptom testimony on the basis of conservative treatments, without more, is not substantially supported.

**iv. Medication Side Effects**

The ALJ also discounted Plaintiff's physical and mental health symptom testimony on the basis that the record did not support medication side effects have caused greater limitations. Tr. 31–32. The ALJ found that it was not entirely clear as to whether the medication side effects that Plaintiff testified to at the hearing were related to his physical conditions, mental conditions, or combination thereof. Tr. 31. However, the ALJ determined that despite Plaintiff's testimony, the evidence of record did not reflect that he needed to significantly lie down throughout the day, elevate his right leg, or take naps due to side effects of medications to the extent that he alleged. *Id.*; citing Tr. 81–82.

Medication side effects are a relevant factor for an ALJ to consider in determining whether a claimant is limited in his ability to work. *See Jackson v. Colvin*, No. C13-1560-TSZ-BAT, 2014 WL 2154260, at * 1 (W.D. Wash. May 22, 2014) ("An ALJ should consider all factors that might have a significant impact on an individual's ability to work, including side effects of medications"); *Varney v. Sec'y of Health & Hum. Servs.*, 846 F.2d 581, 585 (9th Cir.), *on reh'g*, 859 F.2d

1396 (9th Cir. 1988) ["[I]f the Secretary chooses to disregard a claimant's testimony as to the subjective limitations of side effects, he must support that decision with specific findings similar to those required for excess pain testimony, as long as the side effects are in fact associated with the claimant's medication(s)"], *overruled by statute on other grounds in Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991); *Figueroa v. Sec'y of Health, Ed. & Welfare*, 585 F.2d 551, 554 (1st Cir. 1978) (holding that an ALJ must make finding on appellant's claim regarding side effects of medication); *see also Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (holding that the ALJ's discussion of the evidence must be sufficient to "assure[] [the court] that the ALJ considered the important evidence . . . [and to enable the court] to trace the path of the ALJ's reasoning").

Here, the ALJ did not provide reasons for his finding that the record did not support that medication side effects have caused greater limitations, other than to state that "there are very few reports of such side effects to treatment providers during the relevant period." Tr. 31–32. To the extent the ALJ discounted Plaintiff's subjective symptom testimony on the basis that the record did not support medication side effects have caused greater limitations, this finding is not substantially supported.

**b. Mental Health Impairments**

**i. Objective Medical Evidence**

As to Plaintiff's mental health impairments, the ALJ noted that Plaintiff testified he was not able to work due to PTSD, manic-depression, and anxiety. Tr. 26. In rejecting his symptom testimony, the ALJ summarized the record but did not identify which portion of Plaintiff's testimony is undermined by the medical evidence. Tr. 32–33; *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." (citation and internal quotation marks omitted)). The ALJ does not provide any explanation or identify how the summarized medical records undermine any of Plaintiff's hearing testimony related to his mental health impairments. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony.").

Therefore, the Court finds that the ALJ erred in discounting Plaintiff's mental health symptom testimony on the basis that it was unsupported by objective medical evidence.

**ii. Daily Activities**

The ALJ found that Plaintiff's activities suggested he was able to function within the parameters of the RFC. Tr. 33–34. As to his mental impairments, the ALJ noted that Plaintiff was able to seek treatment at the emergency room when he thought he needed medications, work with a provider to try to obtain housing, move into a place when he was able to acquire housing, regain custody of his son, generally attend his appointments as scheduled, volunteer in a drug treatment program, ride his bike everywhere as he referenced in August 2024, play video games with his children, and play Legos with his son. *Id.*; citing Tr. 1645. The ALJ also found that Plaintiff had no difficulty interacting with his treating providers, he asked his mental health provider for monthly appointments due to weekly appointments with his drug treatment program and working with drug court and attending meetings, and in August 2024, he was excited about Denny's coming into town because he had a subjective belief he could work there washing dishes 20 hours a week. Tr. 34; citing Tr. 1645, 1648. The ALJ also cited Plaintiff's statement in a Function Report that he used public transportation. Tr. 34; citing Tr. 396.

Substantial evidence does not support discrediting Plaintiff's mental health allegations based on his daily activities. The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities," such as

grocery shopping or driving a car, "does not in any way detract from h[is] credibility as to h[is] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (Ms. Vertigan could grocery shop without assistance, walk approximately an hour in the malls, play cards, swim, watch television, and read, but these activities did not consume a substantial part of her day and so did not detract from her credibility). Also, the Ninth Circuit has recognized that the fact the claimant "could participate in some daily activities does not contradict the evidence of otherwise severe problems that []he encountered in h[is] daily life during the relevant period." *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017).

Here, the ALJ's analysis ignores the evidence both in Plaintiff's testimony and in the medical record as to the extremely limited nature of his daily activities. Plaintiff testified that he has "some days that are good and some days that are bad." Tr. 72. The ALJ references Plaintiff obtaining custody of his 15-year-old son, but the record is scarce as to his childcare duties or activities. *See Trevizo*, 871 F.3d at 682 ("[T]here is almost no information in the record about [the plaintiff]'s childcare activities; the mere fact that she cares for small children does not constitute an adequately specific conflict with her reported limitations.").

The ALJ also notes that Plaintiff is able to generally attend his appointments as scheduled. Tr. 33–34. However, Plaintiff testified that he sees his therapist and

psychiatrist once a month, but some days he cannot leave the house. Tr. 67–68, 84. He testified that if he cannot make it to an appointment with his psychiatrist, therapist, or most of the people that he has in-person appointments with, "they understand." Tr. 84. He testified that prior to the last few months before the hearing, he felt so bad he could not leave the house if he needed to "at least one to two times a week[.]" Tr. 85–86. However, he testified that more recently, at least three times a week he has a day bad enough that he cannot not go to an appointment with someone he knows, like his therapist. Tr. 85. Plaintiff testified that he attends AA meetings online, and he "seem[s] to do okay [at drug court] because…the most people that it usually is, is about six people each time." Tr. 77.

The ALJ cited Plaintiff's statement in a Function Report that he used public transportation. Tr. 34; citing Tr. 396. However, the ALJ failed to consider that as part of the same section of questioning in the Function Report, Plaintiff noted that he does not drive because he does not have a license or a vehicle. Tr. 396. Further, the ALJ acknowledged in his decision that Plaintiff "has never had a driver's license and he does not drive." Tr. 27, 76.

Finally, as noted above, Plaintiff's statement in August 2024 that he was "excited for Denny's coming into town" and he "could work there, 20 hours a week, washing dishes" is not substantial evidence. Tr. 1648. Again, Plaintiff said this as part of his "response to the intervention progress made toward goals and

strengths" during therapy, and thus, this statement is irrelevant to his symptom reports. *Id*.

**iii. Inconsistent Statements**

The ALJ appears to discount Plaintiff's symptom testimony in part because of an alleged inconsistent statement regarding his mental health. Tr. 34. The ALJ noted that at the hearing, Plaintiff was asked if his mental and/or physical health was impacted when he was hit by a car as a pedestrian in October 2023. *Id*. The ALJ referenced Plaintiff's testimony that it made him "a little bit more paranoid" and he had more pain than he used to. *Id*.; citing Tr. 87. The ALJ also noted that Plaintiff was hit by a car again while riding his bicycle in April 2024. Tr. 34. The ALJ stated that Plaintiff complained of left shoulder pain and neck pain while being treated at the emergency room in April 2024, but there was no reference that he endorsed complaints of paranoia from being hit by a vehicle again. *Id*.; citing Tr. 1709. The ALJ also stated that Plaintiff's mental health treatment records did not reference any paranoia about riding his bike after both accidents. Tr. 34. The ALJ instead references treatments note from August 2024 and November 2024, where Plaintiff stated he was "riding my bicycle everywhere[,]" and he rode his bicycle to the clinic to pick up his medications. *Id*.; citing Tr. 1648, 1732.

The ALJ appears to indicate that he is rejecting Plaintiff's symptom testimony in part because Plaintiff continued to ride his bike despite testifying that

he was "a little bit more paranoid" after being hit by a car. Tr. 34. However, as discussed above, the ALJ acknowledged that Plaintiff "has never had a driver's license and he does not drive." Tr. 27, 76. The ALJ also recognized:

> As to the bike, he said using his bike is easier for him than walking as he can stand up and then sit back down on it when he feels uncomfortable. But he also stated as for his mental health lately, he is a little scared to ride his bike because of what happened when he got hit, and he feels like when he sees a car, he's always conscious and he's very paranoid about the whole situation.

Tr. 28.

Thus, the ALJ's finding that Plaintiff offered inconsistent statements about paranoia while riding his bike after his accidents is not supported by substantial evidence.

Overall, the Court does not find the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective symptom testimony related to his mental health impairments. This error is not harmless in that it could have affected the ALJ's assessment of Plaintiff's subjective symptom testimony, which describes disabling impairments. Therefore, the ALJ committed reversible error and on remand will reevaluate and make specific findings of credibility as to Plaintiff's symptom testimony of his mental health impairments.

**C. Step-Three Analysis**

Plaintiff contends the ALJ erred at step three by failing to conduct an adequate analysis. ECF No. 5 at 15. He argues that the ALJ offered nothing more than a summary conclusion that his mental health impairments do not meet or equal a listed impairment. *Id.*; citing Tr. 24-25.

In evaluating mental limitations, ALJ's must assess an individual's mental limitations and restrictions in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. Social Security Ruling 96-8p, 1996 WL 374184, at *4 (effective July 2, 1996). "The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." *Id.*

The ALJ concluded that Plaintiff had moderate limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. Tr. 24. Plaintiff argues that when the opinions of Dr. Morgan and Dr. Lewis and his symptom testimony are properly considered along with the treatment record, the evidence shows that he has marked limitations in the "paragraph B" criteria of interacting with others, adapting or managing oneself, and concentrating, persisting, or maintaining pace. ECF No. 5 at 17.

As discussed above, Dr. Morgan found that Plaintiff had marked limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, learn new tasks, perform routine tasks without special supervision, adapt to changes in a routine work setting, be aware of normal hazards and take appropriate precautions, ask simple questions or request assistance, communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, complete a normal work day and work week without interruptions from psychologically based symptoms, and set realistic goals and plan independently. Tr. 1316. Dr. Lewis reviewed Dr. Morgan's report and she mirrored his assessed limitations. Tr. 1320. The ALJ found Dr. Morgan's opinion to be unpersuasive. Tr. 36. The ALJ did not mention Dr. Lewis's review in his decision.

Therefore, the ALJ's errors in evaluating the medical opinion evidence and in discounting Plaintiff's mental health symptom testimony necessarily effect the step three findings. Thus, on remand the ALJ will reevaluate the evidence of the record after properly considering the medical opinion evidence and Plaintiff's testimony, and make new step three findings if appropriate.

**D. Lay Witness Statement**

Plaintiff contends the ALJ failed to adequately evaluate the lay witness testimony submitted by Plaintiff's partner, April Tinney. ECF No. 5 at 17-18; ECF

No. 8 at 6. Ms. Tinney submitted a third-party function report on July 21, 2022, reporting that Plaintiff's "daily routines depend on his level of pain/mental state." Tr. 339. She stated that Plaintiff does not go outside often because of his "anxiety, just being around people[.]" Tr. 341. Ms. Tinney reported that Plaintiff does not like being around many people and he "gets bad anxiety[,]" and he overthinks everything and always thinks that people are "out to get him[.]" Tr. 343–344.

The ALJ stated that he "took into consideration the third-party statements of the claimant's partner, April Tinney but does not consider the persuasiveness, as they are not opinions pursuant to the Regulations." Tr. 37; citing Tr. 338–346. The parties disagree on the level of discussion that an ALJ must give lay witness testimony. ECF No. 5 at 17–18; ECF No. 7 at 17–18.

As noted above, the Social Security Administration promulgated new regulations in 2017, which apply to claims filed on or after March 27, 2017. On September 18, 2026, the Ninth Circuit held that the 2017 revisions to the Social Security Administration's regulations did not abrogate the "germane reasons" standard for discrediting lay testimony in cases involving claims filed on or after March 27, 2017. *Fain v. Bisignano*, No. 25-3219, 2026 WL 2795427 (9th Cir. Sept. 18, 2026). The Ninth Circuit determined, "the regulations clearly contemplate that nonmedical sources provide information that may be valuable to ALJs' disability determinations." *Id.* at *6; citing 20 C.F.R. § 404.1529(c)(3)

("The information that . . . medical sources or nonmedical sources provide about [a claimant's] pain or other symptoms . . . is also an important indicator of the intensity and persistence of [the claimant's] symptoms."); *see also* 20 C.F.R. § 416.929(c)(3) (same). In *Fain*, the Ninth Circuit concluded that the ALJ harmfully erred in failing to give a reason, germane or otherwise, for rejecting the lay testimony of the claimant's partner. *Id.*

The Court finds that the ALJ failed to adequately evaluate the lay witness testimony submitted by Plaintiff's partner, April Tinney. On remand the ALJ will properly evaluate the third-party statement.

**E. Step-Five Determination**

Plaintiff contends the ALJ erred by failing to meet her burden at step five. ECF No. 5 at 3, 6, 8, 21–22. The ALJ's determination at step five was based on the vocational expert's testimony that jobs that exist in significant numbers were available in the national economy to an individual with Plaintiff's age, education, work experience, and RFC. Tr. 38. However, the Court notes that because the ALJ erred in evaluating the medical opinion evidence, in discounting Plaintiff's mental health symptom testimony, and in failing to properly evaluate the lay opinion evidence, reconsideration of this evidence and testimony could alter the ALJ's assessment of Plaintiff's RFC and/or alter the limitations included in the

ALJ's hypothetical posed to the vocational expert. Therefore, the ALJ will reevaluate the step five determination on remand.

**F. Remand for Further Proceedings**

Plaintiff urges the Court to remand this case for an immediate award of benefits. ECF No. 5 at 22. "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation").

However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the

claimant disabled on remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

"Administrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence may well prove enlightening in light of the passage of time." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotations omitted). Here, further proceedings are necessary because there remains conflicting medical opinions as to Plaintiff's functionality. Even if the opinions of Dr. Morgan and Dr. Lewis were fully credited, the ALJ would still need to resolve their conflicts with other credited medical opinion evidence in the record. Therefore, remand for further proceedings is appropriate.

Upon remand, the ALJ should further develop the record and issue a new decision. The ALJ should reevaluate the medical opinion evidence, Plaintiff's symptom testimony, and the lay opinion testimony, conduct another step three analysis and determination of Plaintiff's RFC, and, if necessary, Plaintiff's ability to perform work at steps four and five.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 5) is **GRANTED**.

2. Defendant's Response Motion (ECF No. 7) is **DENIED**.

3. Pursuant to sentence four of 42 U.S.C. § 405(g), this action is hereby **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Order.

The District Court Executive is directed to enter this Order, enter judgment for Plaintiff, provide copies to counsel, and **CLOSE** this file.

DATED October 29, 2026.

THOMAS O. RICE
United States District Judge